Good morning. Good morning. May it please the Court, I'm Charles Post, here on behalf of Brandon Moyer, an apprentice, Program Enrollee, Independent Training and Apprenticeship Program, and Norman Nutter, Inc., an electrical contractor. I'd like to reserve three minutes of my time for rebuttal. A penalty case is really grounded on two analytical points. First, that the Fitzgerald Act means something. It's not merely a non-binding resolution. It imposes a statutory scheme. It enables the Department of Labor to develop and promulgate regulations designed to create a national standard for the promotion of apprenticeship opportunities. The second point is that the derecognition of California by the Department of Labor under that regulatory scheme, which was created under the Fitzgerald Act by Congress, also means something. If that's right, that the Fitzgerald Act imposes a national basic standard of apprenticeship standards and the derecognition of California is a meaningful act, there wasn't a mere waste of administrative time in proceeding, then California no longer has the power under what was intended to be a joint system of apprenticeship regulation to regulate apprenticeship opportunities in the state of California below that national standard. That is, by enforcing regulations and statutes that fall below the national standard. That derecognition already dispositively determines that the California statutory regime for regulating apprenticeship falls below that national standard. That arrives at this court as a matter of res judicata. Let's imagine a continuum, if you will. And on my left-hand side of the continuum is the position that any project that has any contact with the federal government, tax-exempt bonds, whatever, tax credits for investment in the project, whatever, that if anything like that is present, it's federal, federal preempts. That's on that side. On this side is the argument I think your opponent is going to make, which is that that's not enough. It has to be an actual apprentice program. And the reason the state's regulations are different than the federal is to prevent the apprentice program from being used to undercut fair wages. Where is this case on that continuum? Well, is it in the middle or is it more toward the left? Well, I guess there's two points in response to that. I would put, to answer the Court's question, I would put it toward the left side of that spectrum. However, we're giving up a lot, and I think that the State has to give up a lot to even enter the Court's framework. Because the State has begun by saying, and look what the State does. This record shows that the State doesn't even make the inquiry the Court has now posed to me. Instead, the State looks to whether or not the federal government is a granting contracting party. That's all it does. It never makes the determination as to whether or not there is any federal money in any of the public works projects. That is, I think the Court's question reveals, a fair inquiry given this regulatory and statutory scheme. The DOL has a set of regulations. Now, the Court rejected our interpretation of those regulations, but it's not our interpretation. It's the Department of Labor's. How do we know that? Well, we know that because of the regulation itself, 29.2k. And we know that from the two interpretive letters issued on DOL letterhead to the very agencies that are the parties in this lawsuit. And we also know that because there was no countering evidence in the trial court. The agency is not involved in the litigation at this point. Shouldn't we ask them to formally state their position? Well, that could have been an inquiry that the trial court required the parties to make. It didn't. It made a decision instead by refusing to defer to the undisputed evidence of the DOL's interpretation of its own regulation. Who would agree if we did that? No, Your Honor, it wouldn't at all. You'd be happy to have their formal opinion on the issue? Yes. Okay. So I just want to make sure I understand, because it looks like the district court focused on the phrase dealing with apprenticeship, correct? And pertaining to, Your Honor. All right. And the district court is not involved in the litigation.  It's not involved in the federal, in the definition of federal purpose. And so we have to determine what that phrase means and how is that meaning accounted for in the agency opinion letters? Is that correct? That's one of the inquiries raised, yes, Your Honor. Okay. And if the district court improperly discounted the opinion letters, just trying to figure out what is the proper remedy, and should we apply the letters or should we remand or what's your view? Well, what we asked for in the brief, Your Honor, is that you remand for the crafting of an appropriate injunction consistent with the arguments we presented. I think that is the appropriate remedy. And if municipal bond funding is enough to make a project a federal purpose, I mean, doesn't that mean that essentially every public works project meets that standard? Do you have, I guess I'm just trying to figure out if you have any supporting authority of this very expansive view of the Fitzgerald Act? Well, I know that bogeyman has been raised by the State that essentially every project would meet this broad definition of federal purpose. We actually don't think the world is that dark or that the logic is inevitable that that's the case. In this case, two of the projects were funded by Build America Bonds, a recession response by Congress intended to do the very thing that the public works projects in this case did, create jobs and construction opportunities. Under the DOL's determination of the meaning of its regulations, that is exactly the kind of subsidy, exactly the kind of economic contribution that should meet the definition of federal purpose. Whether or not, and we have not made the argument that sales taxes or the mixing of Federal monies, the undisputed evidence in this case by the former director of the California Department of Finance is that there was a Federal contribution in these projects that meets the definition of the DOL. Of course, the Court ---- That would be true in your view even though the project did not anticipate the use of apprentices? Well, this gets to the pertaining to and the deals with. The Court interpreted the statute really to mean, or the regulation to mean, when apprenticeship is the subject of the contract, grant, or subsidy. We submit that that the language won't tolerate that. Pertaining to and deals with means associated with, affecting, concerning. That's the plain meaning, openeth the source, it is right there. The overriding point in that interpretation is that everybody in the real world knows that public works contracts and apprenticeship are welded together. The prevailing wage statutes wed in the real world, in the practical world, the world of apprentices and contractors and the people building construction projects. Apprenticeship and public works projects are welded together. To say that public works projects do not pertain to apprenticeship is to refine the face of that very present reality. Mr. Post, let me ask you just a little bit different question. I don't think you addressed this directly. But what is our standard of review in the sense of how much deference we should give to the agency's interpretation of that term? Well, I believe under Auer and Basiri that the appropriate standard for deference to the DOL is that you engage the Basiri inquiry, which is first determine if there is an ambiguity. We're both here, both urging different points of view. There is an ambiguity under the applicable test. And second, we ask whether or not the agency's longstanding, in this case, long-held view is facially improper, unreasonable. You said your position is it's our deference. Yes, Your Honor. That's what applies. It is ambiguous pretty much on its face. Therefore, we should give deference to what the agency has said in these two letters. Yes, Your Honor. If we accept that and we accept the agency's definition, is the record sufficient for us to apply that definition to the, I'll call them the contracts at issue in this case? The Court might remand. I would understand if it did. But I will submit that the same ---- Remand for what? You mean further fact-finding? Well, it's possible, Your Honor. I will submit this. The State had an opportunity to present evidence in response to a preliminary injunction raising disputed issues of material fact as to whether or not the injunction should issue. Your position is there's sufficient facts in the record before us? Yes, Your Honor. I see that I've just reached my rebuttal time, and I'll excuse myself. It's a fascinating case. Maybe we could invite you both back for a college class on federalism. May it please the Court. I'm Fred Lonsdale, Officer of the Director, Legal Unit, representing the Department of Industrial Relations, Defendants and Appellees. We ask that you affirm the decision of the district court denying ITAP's request for an injunction and finding that no serious question of law is raised by ITAP's complaint. I'd like to make three points. Point one, the Fitzgerald Act establishes a voluntary system of apprenticeship, and the regulations do nothing to alter the voluntary nature of the federal system. Point two, the Department of Labor letters that have been alluded to in this case don't apply to this case because they involve tax credits and bond fundings, not tax credits and bond subsidies, not actual federal funding of a project. Does that include the program funded by stimulus money? Yes. In fact, that's So Congress passes a $700 billion project designed to get the economy out of the doltrums and specifically addresses some of that money to apply to projects in California. It's federal dollars, but you say that's not a federal project. Well, I'm sorry, I misunderstood your question. The federal Build America bonds in question in this case do not involve any federal funding of the project. They involve a subsidy to the bond to the banks for lending the money, but it's not a federal subsidy. It's not a federal funding of the project. If there were federal funding, you know, that would be a different case. And I'm sorry, but, you know, based on the record, it appears to me that that's the real dispute here, and that is whether tax exemption was enough federal support to count as federal purposes. Well, I think that federal purposes as defined clearly contemplates that there will be, although the regulation uses a lot of different words, but it contemplates that there will be some connection to apprenticeship. We do have some data, for example, as we cited, veterans benefits that are provided to veterans who are in a program approved for federal purposes. I'm curious, because prior to the ruling from the district court in this case, didn't the state essentially accept the definition of federal purpose, purpose contained in the agency letters, and only dispute that when the definition applied to these projects? No, absolutely not. Those letters are actually the state's letter to Gray Electric, and I think that's at ER 206-07. It appears that the state argued that the project was not a federal purpose because it was not federally funded. Also, in briefing to the district court, you argued California appropriately defers on projects that are actually federal funded and carried out. That goes to there is a California case, Southern California Laborers, which raised the issue of federal funding. California defines, for the purposes of California public works law, California defines public funds as including federal funds. So until it was recently changed by Congress, the student loan program, which backed up banks and private lenders when they loaned money to college students, under your definition, that would not be a federal program. No. I think the question that you have to ask. Kind of ask for a yes or no. Is that a federal program or not? That would be a federal program. Even though the money doesn't go directly to the students. Correct. That would still be a federal program. And a program that allowed veterans to receive medical care at clinics operated by private hospitals, that would not be a federal program. Under your definition. No. Our definition of federal program is much broader than the definition of federal program pertaining to apprenticeship. The problem that we have in this case, I think, is that ITAP has conflated federal purpose pertaining to apprenticeship with federal purpose generally. If you look at whether a construction project has a federal purpose, you might say, does it serve federal ends? Is it to build a federal courthouse? That's one line of inquiry. But if your question is whether or not a contract pertains to apprenticeship, that's a very different question. And in this case, the two types of federal contact that we have are so remote from apprenticeship, they have no connection to apprenticeship. The municipal bond. Your argument is that apprenticeship means apprenticeship. Is that yes. For the purposes of deciding what the Fitzgerald Act regulations were saying, they clearly say that it's benefits, contracts, subsidies pertaining to apprenticeship, or dealing with apprenticeship. So the federal contract would have to use the word apprenticeship in some fashion. Well, for example, the Davis-Bacon Act. The Davis-Bacon Act, where there is federal funding of a project, has language describing how to deal with apprentice wages on federal projects covered by the Davis-Bacon Act. That, to me, is very clearly language that pertains to or deals with apprenticeship. On the other hand, a federal funding of a project that doesn't meet the Davis-Bacon trigger, where there is some federal money but not enough to trigger the Davis-Bacon Act, does not pertain to apprenticeship, does not pertain to the Davis-Bacon Act. Would that include, for instance, mentioned earlier, the Reinvestment Act, the Stimulus Act of a couple years ago? Well, that's a little bit complicated question. The Build America bonds that we are talking about here provided a subsidy to lenders. They did not, in that case, trigger the application of the Davis-Bacon Act. They don't pertain to apprenticeship. They don't deal with apprenticeship. Some stimulus money carried with it Davis-Bacon Act obligations, in which case you would have the question as to whether or not the Davis-Bacon Act and the state law were in conflict, but we don't have that here. What's your authority for interpreting the scope of the Fitzgerald Act so that narrowly? Well, we don't interpret the scope of the Fitzgerald Act any more narrowly than the language of the Fitzgerald Act allows. The Fitzgerald Act, it describes the federal government creating a federal program for apprenticeship, including in states that have no prevailing wage laws. The Fitzgerald Act applies regardless of whether the state has an underlying prevailing wage law, so it's not dependent on there being a prevailing wage law. But your definition is narrower than the agency's definition in its opinion letters, right? Well. And so necessarily it means you don't believe that those letters are entitled to any kind of deference from the court, not our deference. No, I don't believe they are entitled to our deference because I think they are. What's your argument for that? I think that they incorrectly interpret their own regulations to the extent that in the context of the letters themselves, they refer to the application of the Davis-Bacon Act apprentice wages, but in the language of the letters they would apply to contracts and projects that are not covered by the Davis-Bacon Act, so they're internally inconsistent. Secondly, those letters were written to the state concerning a slightly different issue, which was what obligation does the state have to recognize federal programs where the state itself is a State Apprenticeship Council state participating with the federal government in the Fitzgerald Act process. Under the Fitzgerald Act regulations, there are two types of apprenticeship relationships. In some states, the federal government is the only actor, and the federal government approves programs for federal purposes. Again, not for State purposes, but for Federal purposes. If I understand your argument correctly, it's that the two letters that we have in the record are not entitled to our deference because they don't precisely address the issue issues present in this appeal. That's correct, Your Honor, yes. Would you have any objection if the panel asked the agency for a precisely tuned and focused opinion on the issue? I suppose not, although I don't think it's necessary because I think the regulations themselves clearly exclude the type of federal contact that we have in this case from the definition that the regulations already give for federal purposes. So your argument is even if the two letters absolutely reflect the position of the agency, they're not entitled to our deference, A-U-E-R deference, because they misconstrue the regulation at issue? I believe, yes, that's correct. They misconstrue the regulation if they are interpreted as broadly as the appellant suggests. But, moreover, I think that there is a factual predicate there, which is that those letters discuss the approval of an apprenticeship program in a situation where the state is approved as a State Apprenticeship Council state. The question was whether or not the federal government can also approve programs or whether the federal government has ceded all authority to the state. And it said where you have this joint partnership, the state should recognize federal programs. That's a different inquiry where the State of California is no longer participating as a State Apprenticeship Council state. What led to California not being approved to the 2007? Well, there was a difference of opinion with respect to California legislation concerning approval of new apprenticeship programs. California, the California legislature, included some definitions in a long-standing, California had, since the beginning of its participation as a regulating apprenticeship in 1939, had required that programs be approved on a showing of training needs. That definition was changed slightly in 1999. The federal government felt that that was too narrow and wanted to approve more programs for federal purposes. And that's certainly the federal government's prerogative. It, after all, is approving programs not for state purposes but for federal purposes. And so if it wants to approve more programs, so be it. And that was the source of the dispute that led to the derecognition. At the time that California was derecognized, it's important to note that nothing happened to the state programs that had state approval. The federal government didn't say, You can't do this. You can't continue to have your state law. They simply said, Thank you. We appreciate the help that you've been giving us since 1978, but from now on we're going to approve programs for federal purposes ourselves. And there's nothing wrong with that. But it doesn't mean that they are now approving programs for state purposes. It simply means that they have taken it upon themselves as the Department of Labor to approve programs for federal purposes. And we agree that they can do that. And the regulation says what that means. It says that programs approved for federal purposes are eligible for benefits, et cetera, pertaining to or dealing with apprenticeship. And so, for example, if you have the Service Contract Act that says if the federal government is doing a certain level of work with a contract, apprentice labor can be used and paid less than the prevailing wage on that federal contract. There's a difference between the concept of federal purposes generally and the specific language in the regulation that refers to federal purposes pertaining to apprenticeship. And we submit that it's clear that that's what the regulation addresses. It's a regulation that says what is the benefit of being approved? Why would a program in a state that has no prevailing wage law want to get federal approval? Well, it's because it brings with it federal benefits, and it brings with it approval for federal purposes. I have very little time left, and I would just like to stress, finally, that we think there is no basis for preemption in this case, which is what it would really come down to, because California's law can be complied with. While the federal program continues to operate, there's no federal requirement that contractors use apprentices on public works. Contractors could participate in a federal apprenticeship program with federal approval, working entirely on private work, and there's absolutely no conflict that would rise to the level of preempting longstanding state law. And I have no more time, so if I have any other questions, I'd appreciate it. Thank you. Thank you. Two quick points. The question really is, who interprets federal purposes? Following the derecognition of California, the federal standard and the DOL becomes the preeminent, the only regulator, the only interpreter of those regulations in the state of California. Second, the state urges that there must be some connection to apprenticeship in a contract under 29.2K pertaining to or dealing with apprenticeship. They argue that that would, they argue that that must be overt or expressed in the contract. They also attempt to import the Davis-Bacon Act in a way that is wholly unrealized in the record and in the regulations. So your position is if it's a federal project and contractors want to use apprentices, that's the end of the inquiry? Well, actually, I think that that's the state's view, is that if the federal government is the awarding agency and is the source of the majority of the funds. I'm using your broader definition of a federal project. Well. Bonds, tax-exempt credit, whatever. Well, we're really talking about two different inquiries. I think the state is now conceding it has to look to determine the source and degree of federal funding. That is a concession it did not make in the trial court and that I think the record demonstrates it isn't doing. Then the question is what degree of federal funding is sufficient? Public works contracts pertain to apprenticeship. Everybody in the field knows it. It's the way the world works. More importantly, let's look at the obverse example. Under the state's interpretation, a federal government contracting project that was 100 percent federal funding for a construction project, if it did not mention the word apprenticeship, would under the state's view not pertain or deal with apprenticeship. That's crazy. That would render the Fitzgerald Act into a non-binding resolution, a suggestion. Nothing in the 80-year history of the Act would support that weakened interpretation of the Fitzgerald Act, which is clearly, overtly, and expressly intended to create a national standard, a basic standard promoting apprenticeship. Thank you. Thank you. Thank you very much both for your arguments, the cases submitted.
judges: Hawkins, Tashima, Murguia